IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLENN RODGERS | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-cv-00709 |
| | § | |
| PEPSICO, INC., NEW BERN | § | |
| TRANSPORT CORPORATION | § | |
| AND BOTTLING GROUP, LLC | § | |
|     Defendants | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Glenn Rodgers, (hereafter identified as "Rodgers" or "Plaintiff"), files this Original Complaint, complaining of PepsiCo, Inc., New Bern Transport Corporation and Bottling Group, LLC, and for his cause of action, respectfully shows the following:

**I.**
**INTRODUCTION**

1. This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for violations of the Americans with Disabilities Act of 1990 as Amended, committed against Plaintiff during his employment with Defendants.

2. Plaintiff demands a jury on all issues triable to a jury.

**II.**
**PARTIES**

3.   Plaintiff, Glenn Rodgers, is an individual residing in Harris County, Texas.

4.   Defendant, PepsiCo, Inc. is a North Carolina for-profit corporation.  PepsiCo, Inc. may be served with citation through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

5.   New Bern Transport Corporation is a Delaware for-profit corporation.  New Bern Transport Corporation may be served with citation through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

6.   Bottling Group, LLC is a Delaware for-profit corporation.  Bottling Group, LLC may be served with citation through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136

7.   Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

.

8.  This is a civil action over which this court has jurisdiction pursuant to 28 U.S.C. § 1331.

9.  The Court has personal jurisdiction over Defendants since they regularly conduct business in the State of Texas, and therefore have minimum contacts with the State of Texas.

10. Alternatively, the Court has personal jurisdiction over Defendants since the acts giving rise to this suit occurred within the State of Texas.

11. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

12. All conditions precedent to filing this lawsuit have been met

## IV.
## PROCEDURAL REQUISITES

13. Plaintiff filed a Charge of Discrimination under Charge Number 846-2015-04223 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC CRD") on or about April 17, 2015.

14. On December 5, 2016, the Equal Employment Opportunity Commission issued Plaintiff his Notice of Right to Sue.

15. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

## V.
## FACTS

16. Plaintiff, Glenn Rodgers, began his employment with Defendants on May 27, 2014.

17. Plaintiff has been suffering from a shoulder injury for some time and prior to his employment had recently had surgery on his shoulder.

18. At the time of his hire, Plaintiff had a 25-pound weight restriction when it came to lifting.

19. At all times and prior to his hire, Defendants were aware of Plaintiff's 25-pound weight restriction when it came to lifting.

20. Upon being assigned his duties, Plaintiff requested an accommodation due to the 25-pound weight restriction when it came to lifting.

21. Plaintiff's supervisors rejected Plaintiff's request for an accommodation.

22. Despite the rejection, Plaintiff performed his duties as requested and in the beginning of July 2014, the job continued to cause additional complications with his shoulder.

23. Plaintiff's doctor initially advised him not to return to work for a couple of days.

24. On July 7, 2014 Plaintiff was released by his doctor to return to work.

25. Plaintiff notified Human Resources of his release to return to work. However, HR did not allow him to return to work.

26. When he inquired why, HR told Plaintiff "Obviously you can't do the job, and we need to find you a different position."

27. Rodgers responded asking "Which position would the company have for me that would coincide with my weight restrictions?"

28. Human Resources advised him to go online and see which positions had an open availability and to apply.

29. Plaintiff applied for the position of Machine Operator as he had prior experience in this position.

30. Plaintiff informed Human Resources that he had applied for the position since the position coincided with his weight restriction.

31. On September 16, 2014, Plaintiff began working as a Machine Operator.

32. During training, Plaintiff's supervisor assigned him to operate a machine that required Plaintiff to lift a shrink roll that exceeded 25 pounds.

33. The shrink roll that was above Plaintiff's weight restriction needed to be changed twice a day.

34. As a reasonable accommodation, Plaintiff was able to have a co-worker help him change the shrink roll such that Plaintiff would not have to exceed his 25 pound lifting restriction.

35. However, Plaintiff's supervisor told Plaintiff that he was not allowed to have his co-worker help him with the changing of the shrink roll.

36. Plaintiff's supervisor told Plaintiff, "If you can't do it, we're going to let you go, and we don't need you back here."

37. Plaintiff told his supervisor about his weight restriction and asked that he get the paperwork from Human Resources.

38. In the interim, Plaintiff performed the duties assigned.  However, the weight restriction issue went on for 3-4 days and never got resolved.

39. Because Plaintiff's request for an accommodation was denied, Plaintiff was required to change the shrink roll himself and subsequently pulled a muscle changing the shrink roll.

40. Plaintiff was placed on light duty by his doctor in October 2014.

41. On January 6, 2015 Plaintiff visited his doctor again and he was released to return to work with full duties along with the previous weight restriction, which remained.

42. Therefore, Plaintiff was able to resume his machine operator position if granted the requested accommodation.

43. When Plaintiff contacted Human Resources once again, they said not to go back to work even though the doctor approved his return.

44. Human Resources told Plaintiff that Defendants were not required to accommodate Plaintiff's weight restriction when it came to lifting.

45. When Plaintiff applied for the Machine Operator position, he was told by Human Resources that his duties would not include anything outside of his restrictions.

46. Human Resources than placed Plaintiff on Emergency Medical Leave, without pay.

47. Since January 6, 2015, Plaintiff was off work under Emergency Medical Leave.

48. Defendants failed to accommodate Plaintiff's lifting weight restrictions.

49. After being placed on Emergency Medical Leave, HR contacted Plaintiff to inform him that he may be eligible for employment at Frito Lay, but also indicated that Frito Lay was a totally separate company and they could not assist Plaintiff in applying.

50. As a result, Plaintiff did not consider that a reasonable accommodation.

51. PepsiCo informed Plaintiff that they would investigate whether there are any positions that Plaintiff can work that would accommodate his weight restrictions.

52. On July 2015, Plaintiff was informed via letter that he was going to be placed on Emergency Medical Leave for an additional sixty days.

53. PepsiCo performed a Physical Demand Analysis for the Machine Operator position after Plaintiff worked as a Machine Operator.

54. Because Defendants refused to accommodate Plaintiff's disability for work on the Machine Operator position, and because Plaintiff was unable to identify a different position that he could perform after Defendants refused to accommodate Plaintiff's disability, Plaintiff's employment was terminated on September 13, 2015.

## VI.
## CAUSE OF ACTION—DISABILITY DISCRIMINATION

55. Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. Glenn Rodgers is an individual with a disability as defined by the Americans with Disabilities Act, as Amended.

57. Mr. Rodgers has the requisite skill, experience, education and other job related requirements necessary to perform, with or without accommodation, the essential functions of his job with PepsiCo.

58. Therefore, Plaintiff is a "qualified individual with a disability" within the ADAAA. 42 U.S.C.A. § 12111(8); 29 C.F.R. § 1630.2(m).

59. Mr. Rodgers had a record of a disability, and was regarded and/or perceived by PepsiCo as being disabled under the Americans with Disabilities Act, as Amended.

60. As described above, Defendants terminated Plaintiff's employment because of his actual and/or perceived disability, in violation of the Americans with Disabilities Act, as Amended.

61. Other direct and circumstantial evidence demonstrates that Plaintiff was unlawfully terminated because of his actual and/or perceived disability.

62. As a result of Defendants' conduct described above, Plaintiff has suffered and continues to suffer loss of income, as well as emotional pain and suffering, inconvenience and loss of enjoyment of life.

## VII.
## JURY DEMAND

63. Plaintiff demands a jury on all issues triable to a jury in this case, and requests that this case be placed on the Court's jury docket.

## VIII.
## ATTORNEY'S FEES

64.    Paragraphs 1 through 63 are incorporated by reference as if fully set forth herein.

65.    Plaintiff is entitled to recovery of his attorney's fees and costs incurred in the prosecution of these claims, both at the trial level, along with conditional appellate awards for each level to which judgment rendered in this matter is taken.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that upon final hearing in this cause, Plaintiff have and recover against Defendant the following:

a.  Compensatory damages as allowed by law;

b.  Economic damages as allowed by law;

c.  Reinstatement, or front pay, in lieu of reinstatement;

d.  Punitive damages;

e.  Pre-judgment and post-judgment interest as allowed by law;

f.  Attorney's fees and costs of court; and

g.  Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

Ahmad & Capodice, PLLC

/s/ Dwain G. Capodice
Dwain G. Capodice
State Bar No. 24031915
dwaincapodice@gmail.com
Nasim Ahmad
State Bar No. 24014186
nahmad@cline-ahmad.com
Ahmad & Capodice, PLLC
24900 Pitkin, Suite 300
Houston, Texas 77386
Telephone: (832) 452-1869
Facsimile:  (281) 864-4379

ATTORNEYS FOR PLAINTIFF
GLENN RODGERS